IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANDREA C. JOHNSON,

      Plaintiff,

vs.                                                     No. 1:20-CV-00495-KRS

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Andrea C. Johnson's Motion to Reverse and Remand for a Hearing with Supportive Memorandum (Doc. 24), dated March 27, 2021, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Johnson is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Commissioner responded to Johnson's motion on May 25, 2021 (Doc. 26). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the ALJ did not err and will therefore DENY Johnson's motion.

### I. PROCEDURAL POSTURE

On November 6, 2016, Johnson filed an initial application for disability insurance benefits and supplemental security income. (*See* Administrative Record ("AR") at 75). Johnson alleged that she had become disabled on April 28, 2016, due to chronic inflammatory response syndrome ("CIRS"), toxic encephalopathy, chronic fatigue, and long-term toxic black mold

---

[1] The Acting Commissioner is substituted as the proper Defendant pursuant to FED. R. CIV. P. 25(d).

exposure with stachybotrys. (*Id.* at 76-77). Johnson's application was denied at the initial level on June 12, 2017 (*id.* at 75), and at the reconsideration level on December 1, 2017 (*id.* at 85). Johnson requested a hearing (*id.* at 107) and amended her alleged onset date to January 1, 2017 (*id.* at 194). At the hearing, which ALJ Jeffrey N. Holappa conducted on November 1, 2018, Johnson was represented by counsel and testified, as did a vocational expert. (*See id.* at 42-74).

On February 28, 2019, the ALJ issued his decision, finding that Johnson was not disabled under the relevant sections of the Social Security Act. (*Id.* at 11-21). Johnson requested that the Appeals Council review the ALJ's decision (*see id.* at 304) and thereafter submitted a July 15, 2019 report from Scott W. McMahon, M.D. (*see id.* at 38-40). On March 24, 2020, the Appeals Council declined to consider Dr. McMahon's 2019 report and denied the request for review (*id.* at 1-6), which made the ALJ's decision the final decision of the Commissioner. On May 22, 2020, Johnson filed her complaint seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g., id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point,

the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

The ALJ reviewed Johnson's claim pursuant to the five-step sequential evaluation process. (AR at 12-13). First, the ALJ found that Johnson last met the SSA's insured status requirements on December 31, 2018, and that she had not engaged in substantial gainful activity since her alleged onset date of January 1, 2017. (*See id.* at 13-14). The ALJ then found at step two that Johnson suffered from the severe impairments of CIRS and mild persistent asthma. (*See id.* at 14). At step three, the ALJ concluded that Johnson did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*See id.* at 16). In addressing these steps, the ALJ found that Johnson suffered from nonsevere impairments of hypothyroidism, anemia, cervicalgia, pulmonary nodules, and metabolic acidosis (*id.* at 14-15), and he determined that Johnson's nonexertional impairments were nonsevere because she possessed no more than mild limitations in the broad areas of mental

4

functioning addressed in the "paragraph B" criteria of the listings (*see id.* at 15-16). He also concluded that Johnson's exertional impairments did not meet or medically equal the listing for chronic respiratory disorders. (*See id.* at 16).

Proceeding to the next step, the ALJ reviewed the evidence of record, including opinions and evidence provided by medical and nonmedical sources as well as Johnson's own subjective symptom evidence. (*See id.* at 17-19); (*see also id.* at 14-16) (review of medical evidence at earlier steps). As part of this review, the ALJ concluded that Johnson's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence of record. (*See id.* at 17-19). Based on his review of this record, the ALJ concluded that Johnson possessed an RFC to perform light work with certain exertional and environmental modifications. (*See id.* at 16-17).

At the end of step four, the ALJ determined that Johnson was capable of performing past relevant work. (*See id.* at 19). In the alternative, the ALJ also found at step five that Johnson could perform other jobs in significant numbers in the national economy in light of her RFC. (*See id.* at 19-21). The ALJ therefore concluded that Johnson's RFC did not preclude her from working and that she was not disabled. (*See id.* at 21).

## IV. DISCUSSION

Johnson asserts three purported grounds for relief: that the Appeals Council erred in rejecting the 2019 report from Dr. McMahon (Doc. 24 at 11-14), that the ALJ improperly evaluated her subjective symptom evidence (*id.* at 15-17), and that the RFC did not conform to governing legal standards and was not supported by substantial evidence (*id.* at 6-11). For the reasons discussed below, the Court concludes that remand is not warranted on any of these bases.

### A. Appeals Council Evidence

Reviewing a 2017 letter from Dr. McMahon, the ALJ concluded in his February 2019 decision that the provider's opinions were not entitled to any weight because they did not contain "specific work-related limitations." (*See* AR at 19).[2] A couple of months later, Johnson underwent a specialized MRI test that was subsequently reviewed by Dr. McMahon. (*See id.* at 38-40). Dr. McMahon explained that the patterns of brain damage revealed by this procedure were consistent with CIRS, a condition that commonly features toxic encephalopathy ("TE") or "brain fog." (*See id.* at 39). Dr. McMahon opined that Johnson "likely is manifesting symptoms of TE such as short-term memory loss, inattention/problems with concentration, easy confusion, word loss, difficulty assimilating new knowledge and/or disorientation to person or place. If so, these results objectively corroborate her symptoms." (*Id.* at 39-40).

Dr. McMahon wrote his report on Johnson's MRI results on July 15, 2019 (*see id.* at 38), almost five months after the ALJ's decision. Johnson later submitted this report, though not the MRI results themselves, to the Appeals Council. The Appeals Council rejected Dr. McMahon's report when declining Johnson's request for review, finding that the additional evidence "does not relate to the period at issue" and thus "does not affect the decision about whether [Johnson was] disabled beginning on or before December 31, 2018." (*See id.* at 2). Johnson argues that the Appeals Council erred by failing to properly consider Dr. McMahon's opinions. (*See* Doc. 24 at 11-14). The Commissioner contends that the Appeals Council properly determined that the evidence "did not merit granting review in this case." (*See* Doc. 26 at 17-20).

Contrary to caselaw construing an older version of 20 C.F.R. § 404.970(b), "new evidence submitted to the Appeals Council is no longer automatically included in the substantial

---

[2] Johnson concedes that the ALJ properly rejected Dr. McMahon's 2017 opinions. (Doc. 24 at 14) ("The ALJ was correct about Dr. McMahon's June 17, 2017 letter.").

evidence analysis." *Sewell v. Comm'r, SSA*, ___ F. App'x ___, 2021 WL 3871888 (10th Cir. 2021) (unpublished) (citing *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)).[3] Under the operative version of that regulation, the Appeals Council will only consider evidence that was not before the ALJ if it "is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *see also id.* § 404.970(b) (incorporating subsection (a)(5) criteria into rules for "consider[ing] additional evidence").[4] The Court construes the latter clause as imposing a heightened materiality requirement. *See Hanna v. Kijakazi*, No. 1:20-cv-00132 KRS, 2021 WL 3169203, at *5 (D.N.M. July 27, 2021) (collecting District of New Mexico decisions reaching same conclusion). "[W]here the Appeals Council *rejects* new evidence as non-qualifying [under § 404.970(b)] and the claimant challenges that ruling on judicial review," such an appeal presents a question of law that is reviewed *de novo* by the Court. *See Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).

Here, the fact that the Appeals Council dismissed Johnson's additional evidence for failing to satisfy the "predicate requirements" of materiality and chronological pertinence set forth in § 404.970 "indicates that [the Appeals Council] ultimately found the evidence did not qualify for consideration at all." *See Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013)

---

[3] Unpublished Tenth Circuit decisions like *Sewell*, as well as the district court decisions referenced herein, are cited for their persuasive value unless otherwise stated.

[4] Section 404.970(b) also requires a showing that there was "good cause for not informing [SSA] about or submitting the evidence" no later than 5 business days before the ALJ's hearing. *See* 20 C.F.R. § 404.970(b) (citing 20 C.F.R. § 404.935). The undersigned has previously observed that jurists in this District are in disagreement "as to whether a reviewing court should address the recently-enacted good-cause requirement of § 404.970(b) where the Appeals Council did not reject evidence on that basis." *E.g.*, *Marquez v. Saul*, No. 1:20-cv-00110 KRS, 2021 WL 2073510, at *4 n.3 (D.N.M. May 24, 2021) (citations omitted). The Tenth Circuit recently affirmed a district-court decision upholding the Appeals Council's rejection of additional evidence where the Commissioner had pointed out that the claimant "never argued to the Appeals Council that he had good cause for failing to present this material to the ALJ." *Sewell*, ___ F. App'x at ___, 2021 WL 3871888, at *4. But here, the Commissioner has *not* raised a substantive good-cause argument (*cf.* Doc. 26 at 18 n.6) (observing in passing that Appeals Council did not address the issue), and Johnson says nothing at all about the matter. Because the Court concludes that Dr. McMahon's report was properly rejected on other grounds, the presence or absence of good cause need not be resolved.

(unpublished). This conclusion is reinforced by the Appeals Council's decision not to list Dr. McMahon's report with other newly accepted exhibits (*see* AR at 5-6), and to instead include the report with the "procedural documents" near the beginning of the AR (*see id.* at 38-40). *See, e.g.*, *Hanna*, 2021 WL 3169203, at *3-4 & n.2 (citations omitted) (collecting decisions finding that Appeals Council rejects evidence where, as here, it determines that the materials did not satisfy the § 404.970(b) criteria and does not exhibit the materials). Accordingly, the Court finds that the Appeals Council rejected Johnson's additional evidence and that review of this decision must proceed *de novo*. *See Krauser*, 638 F.3d at 1328.[5]

Having conducted a *de novo* review of the record, the Court concludes that Johnson has failed to meet her burden to establish that the Appeals Council improperly rejected Dr. McMahon's report. *See Hanna*, 2021 WL 3169203, at *6 (citing *Bisbee v. Berryhill*, No. 18-cv-00731 SMV, 2019 WL 1129459, at *3 n.5 (D.N.M. Mar. 12, 2019)) (noting "claimant's burden" to establish satisfaction of § 404.970(b) factors). First, to the extent that the report asserts a diagnosis of CIRS, the record already reflects this diagnosis (*see, e.g.*, AR at 530), and the ALJ concluded that this condition constitutes a severe impairment (*see id.* at 14). Accordingly, the diagnosis of CIRS is cumulative, meaning it is not "new" under § 404.970(b). *See, e.g.*, *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (citations omitted).

Second, while Dr. McMahon's opinion that Johnson's MRI reveals "all the NQ criteria of a patient with TE" (AR at 39) may be novel, the report still suffers from the same deficiency that the ALJ found in Dr. McMahon's earlier letter: it "does not contain specific work-related

---

[5] The Commissioner's citation to *Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017), to argue that substantial-evidence review should apply to this inquiry (*see* Doc. 26 at 19) is without merit. The Tenth Circuit in *Vallejo* directed that substantial-evidence review applies to evidence that was "considered" by the Appeals Council. *See* 849 F.3d at 953, 956 (citing *O'Dell*, 44 F.3d at 858-59). *Krauser*, by contrast, requires *de novo* review where a claimant challenges that body's *rejection* of additional evidence. *See* 638 F.3d at 1328; *Hanna*, 2021 WL 3169203, at *2-3.

limitations" pertaining to that condition. (*See id.* at 19). In fact, the report fails to affirmatively assert that Johnson suffers from any symptoms at all because of her condition, let alone address the intensity and persistence of her symptoms or the extent of any limitations. (*Cf. id.* at 38-40). Instead, Dr. McMahon only posits that Johnson was "likely" exhibiting certain symptoms and that, "*[i]f so*," the MRI results would "corroborate her symptoms." (*See id.* at 39) (emphasis added). And even if Dr. McMahon had opined that Johnson *actually* possessed the specified limitations—instead of merely speculating that she "likely" manifested those limitations—Johnson has failed to show that the ALJ would have considered those opinions to be well-supported since the MRI results upon which they were based are not included with his report or found elsewhere in the AR. *See* 20 C.F.R. § 404.1527(c)(2), (3) (requiring that provider opinions be well-supported by objective medical and laboratory findings). Considering these deficiencies, the Court cannot say that it is reasonably probable that consideration of Dr. McMahon's report would have changed the disposition of Johnson's disability claim. *See* 20 C.F.R. § 404.970(a)(5).

Third, the Commissioner echoes the Appeals Council's conclusion that Dr. McMahon's 2019 report does not relate to the period at issue, noting among other things that the underlying MRI post-dated Johnson's date last insured by almost four months and that the report does not reference any period before that date. (*See* Doc. 26 at 19). It is true, as Johnson argues, that "a strict deadline on post-dated evidence" is not required to establish chronological pertinence. (*See, e.g.*, Doc. 24 at 13); *see also* Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-3-3-6(B)(2), 1993 WL 643129 (May 1, 2017). However, Dr. McMahon's report is not "dated on or before the date of the [ALJ's] decision," nor does it "make[] a direct reference to the time period adjudicated in the hearing decision." *See* HALLEX I-3-3-6(B)(2). Nor does the report describe a worsening of any condition or the onset of any new relevant conditions. *See id.* In other words,

the report includes no indicia that the findings addressed therein bear any relationship to the time prior to Johnson's date last insured. *See id.* Without more, Johnson has not established that Dr. McMahon's 2019 report is chronologically pertinent.

Johnson has not met her burden to show that Dr. McMahon's 2019 report was new, material, or related to the period at issue for purposes of § 404.970(b). Accordingly, she has not shown that the Appeals Council's rejection of that report was error, and remand on that basis is not proper.

## B. Subjective Symptom Evidence

Although the ALJ did not entirely reject Johnson's subjective symptom evidence, he did conclude that this evidence was not entirely consistent with the record as a whole. (*See* AR at 17-19). Johnson claims that this determination failed to follow controlling legal standards and was not supported by substantial evidence. (Doc. 24 at 15-17).

Where a medically determinable impairment could reasonably be expected to produce a claimant's alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's symptoms by "examin[ing] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *See* Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *4-7 (Mar. 16, 2016)[6]; *see also* 20 C.F.R. § 404.1529(c) (elaborating on factors to consider). Although the objective medical evidence must be examined as part of this process, the ALJ may not disregard a claimant's subjective symptom evidence

---

[6] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

"*solely* because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged." SSR 16-3p, 2016 WL 1119029, at *5 (emphasis added); 20 C.F.R. § 404.1529(c)(2).

An ALJ's subjective symptom evaluations "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002).[7] Still, such "deference is not an absolute rule." *See Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (unpublished) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). In evaluating a claimant's subjective symptom evidence and other matters, an ALJ must discuss not only "the evidence supporting his decision," but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Along these lines, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Likewise, an ALJ is not permitted to "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)). Failure to follow these controlling legal standards is grounds for remand. *See, e.g.*, *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Johnson alleges that the ALJ erred by solely relying on inconsistencies with the objective medical record when evaluating her testimony concerning the intensity and persistence of her symptoms, in contravention of SSR 16-3p. (*See* Doc. 24 at 15-16). However, the record illustrates that the ALJ considered not only objective medical evidence when assessing the

---

[7] In 2016, SSA eliminated the use of the term "credibility" when describing a claimant's testimony to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (superseding SS 96-7p). As such, older authorities that addressed a claimant's "credibility," *see, e.g.*, *White*, 287 F.3d at 910, are construed as referring to an individual's subjective symptom evidence.

11

intensity and persistence of Johnson's symptoms, but also statements and other information from medical sources, including two state agency medical consultants and two state agency psychological consultants. (*See* AR at 18). In fact, the ALJ *rejected* the assessments of the medical consultants because he found those opinions to be inconsistent with the record as a whole, which necessarily included Johnson's own statements. (*See id.*). In doing so, the ALJ specifically noted that he had considered Johnson's "environmental concerns," including her concerns regarding mold and humidity. (*See id.*); (*see also, e.g.*, *id.* at 54-55) (describing environmental conditions). Likewise, the ALJ cited the opinion of psychological consulting examiner Thomas P. Dhanens, Ph.D., that Johnson "probably does have intermittent deficits in concentration and attention" (*id.* at 525), and the ALJ credited that opinion when concluding that Johnson suffers a mild limitation in concentration, persistence, and pace (*see id.* at 15). Because the record clearly reflects that the ALJ carefully considered the full record when evaluating Johnson's subjective symptom evidence, including a careful consideration of factors other than the objective medical evidence, her claim to the contrary is unavailing.

Johnson appears to further argue that the ALJ's findings regarding her subjective symptom evidence are unsupported by substantial evidence because he did not rely on certain evidence "in context." (*See* Doc. 24 at 15) (citing, *e.g.*, AR at 362, 532, 690-91). In essence, Johnson argues that the Court should reweigh the conflicting evidence considered by the ALJ, which is not permissible on substantial-evidence review. *See, e.g.*, *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (holding that court reviewing agency decision for substantial evidence may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo"). In evaluating Johnson's subjective symptom evidence, the ALJ was entitled to rely on medical

evidence reflecting that her asthma seemed "well-controlled" and was "progressively getting better" (*see* AR at 18) (citing AR at 531), that "her energy and stamina had increased and she could walk at a reasonable pace" (*see id.*) (citing AR at 362), and that improvements were shown in "her energy, cognitions, and overall physical health" (*see id.*) (citing AR at 691). Johnson presents no evidence or developed argumentation that the ALJ misrepresented this record, *cf. Bryant*, 753 F. App'x at 641 (citation omitted), or that he failed to adequately address the countervailing evidence that she contends provided greater support for the alleged intensity and persistence of her symptoms, *cf. Clifton*, 79 F.3d at 1009-10. On this record, the ALJ's findings concerning Johnson's subjective symptom evidence were supported by more than a "mere scintilla" of evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Absent a further showing that the ALJ's findings resulted from legal error or a lack of substantial evidence, the Court concludes that his determinations concerning Johnson's subjective symptom evidence remain entitled to "particular deference." *See White*, 287 F.3d at 910. Remand is not warranted on this ground.

### C. RFC Determination

Johnson also challenges the ALJ's overall assessment of her RFC, contending that he neglected to include a proper narrative discussion of the evidence supporting his conclusions, inappropriately engaged in "picking and choosing" of the evidence, and reached an RFC that was unsupported by substantial evidence. (Doc. 24 at 6-11). The Commissioner argues that the ALJ followed controlling legal standards and supported his RFC determination with substantial evidence. (Doc. 26 at 10-17). The Court concludes that Johnson's arguments are not well-taken.

Beginning with the narrowest argument, Johnson claims that the ALJ engaged in impermissible "picking and choosing from the record to find evidence to support the decision

and ignoring evidence probative of disability." (Doc. 24 at 11). In specifying the information that the ALJ allegedly "ignore[d]" (*see id.* at 7), Johnson primarily recounts certain of her subjective symptom statements found throughout the record. For instance, Johnson spends the bulk of two lengthy paragraphs relating information provided to the ALJ in her function reports and in hearing testimony. (*See id.* at 9-10). And while Johnson devotes multiple paragraphs to discussing information contained in treatment notes from Dr. McMahon and her clinical psychologist at the Department of Veterans Affairs, most of the information that she highlights involves her own subjective complaints rather than any medical findings or opinions from the providers themselves. (*See id.* at 7-9) (citations omitted) (repeatedly describing that Johnson "reported" symptoms or that Dr. McMahon "noted" her reports of limitations)[8]; (*id.* at 10) (citations omitted) (describing problems related by Johnson to psychological provider).

It bears repeating that the ALJ concluded upon review of the record that Johnson's subjective symptom statements "are not entirely consistent with the medical evidence and other evidence in the record." (*See* AR at 17). Therefore, to the extent that the ALJ "ignore[d]" any of the subjective symptom statements cited by Johnson in her brief (*see* Doc. 24 at 7), she has failed to show that the ALJ erred in doing so because she has not shown that these statements were uncontroverted. *See Clifton*, 79 F.3d at 1009-10 (requiring that ALJ "discuss the uncontroverted evidence he chooses not to rely upon"); *see also, e.g.*, *Arvizo v. Colvin*, No. 12-cv-00981 SMV, 2013 WL 12329082, at *4 (D.N.M. Oct. 31, 2013) (citing *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006)) (finding no error in ALJ's failure to address lay testimony, absent showing that testimony was uncontroverted).

---

[8] To the extent that Johnson occasionally references something other than her subjective reports to Dr. McMahon, such as his observation that she "look[ed] tired" during some visits (*see* Doc. 24 at 8) (citing, *e.g.*, AR at 651, 653), Johnson does not explain how such isolated matters are probative or show that they were improperly (or at all) rejected. *Cf. Clifton*, 79 F.3d at 1009-10 (requiring ALJ discussion of "significantly probative evidence he rejects").

14

Nor does Johnson's list of purportedly ignored subjective symptom statements, by itself, undermine the conclusion that the ALJ's decision was supported by substantial evidence. "Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1155 (quotation omitted). It is not enough to show that there is evidence in support of a contrary RFC. *See, e.g.*, *Lax*, 489 F.3d at 1084. Rather, Johnson must show that this contrary evidence in the record "overwhelm[s]" the ALJ's decision. *See Langley*, 373 F.3d at 1118. To aid in this inquiry, the Court turns to Johnson's third argument: that the ALJ's RFC narrative fails to comply with controlling standards.

> When adjudicating a claim for benefits under the SSA, an ALJ's RFC assessment
>
> must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (footnote omitted).

Johnson asserts that the ALJ's narrative discussion of the evidence supporting the RFC "took place in two short paragraphs." (Doc. 24 at 7) (citing AR at 18). This is not correct; the ALJ's two-paragraph discussion of medical evidence was preceded by almost a full page of discussion of Johnson's subjective symptom evidence, which the ALJ sometimes relied upon in formulating the RFC. (*See id.* at 17); (*see also id.* at 18) (rejecting state agency consultants' opinions in light of, *inter alia*, Johnson's own testimony concerning symptoms and "environmental concerns"). Johnson's argument also fails to acknowledge that the ALJ's multi-

paragraph evaluation of opinion evidence, including the conclusion that certain providers' opinions regarding her limitations were entitled to significant weight. (*See, e.g.*, *id.* at 18) (giving "great weight" to state agency psychological consultants' opinions regarding limitations).

And importantly, the ALJ's step-two and step-three narratives also included about two additional pages' worth of discussion concerning medical and subjective symptom evidence relevant to Johnson's claims of CIRS, asthma, hypothyroidism, cervicalgia, pulmonary nodules, metabolic acidosis, obesity, anxiety, post-traumatic stress disorder, and depression. (*See* AR at 14-16). While the *limitations* discussed at steps two and three are not themselves an RFC assessment, *see* SSR 96-8, 1996 WL 374184, at *4, the fact that parts of the ALJ's *narrative discussion* occurred at those steps does not necessarily mean that his narrative failed to meet the standards set forth in SSR 96-8p or that those portions not be relied upon when formulating an RFC. *See, e.g.*, *Estrada v. Colvin*, Civ. A. No. 12-1220-JWL, 2013 WL 5938035, at *3 (D. Kan. Nov. 6, 2013). As long as the decision as a whole reflects that the ALJ properly considered and discussed the relevant evidence in a manner that adequately explains his reasons for determining her RFC, the ALJ's decision need not be disturbed. *See id.* ("Judicial review of the Commissioner's decisions is concerned more with the substance than the form the decision takes . . . ."); *cf. Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005) (declining to remand "where an ALJ provides detailed findings" relevant to step three, even where those findings are "made elsewhere in the ALJ's decision").

When the ALJ's decision is considered in full, Johnson has not shown that the narrative portions of that decision failed to comply with SSR 96-8. The narrative cites "specific medical facts . . . and nonmedical evidence" as required, *see* 96-8p, 1996 WL 374184, at *7, and Johnson does not establish (or appear to argue) otherwise. Johnson also does not show that the ALJ failed

to adequately "discuss [her] ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis," *see id.*, given the ALJ's extended discussion of the evidence concerning Johnson's mental limitations and symptoms, medical conditions and symptoms, and environmental concerns. (*See* AR at 14-16); (*id.* at 17-19). Nor does Johnson present any argument that the narrative lacks a discussion of "the maximum amount of each work-related activity [she] can perform based on the evidence available in the case record." *See* SSR 96-8p, 1996 WL 374184, at *7. Johnson also provides no argument that the ALJ failed to "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved," *see id.*, and nothing in the decision reflects any errors in that regard. Finally, although Johnson faults the ALJ for purportedly "fail[ing] to link the specific evidence to the ALJ's RFC" (*see* Doc. 24 at 11), the ALJ was not required to link "specific, affirmative, medical evidence on the record" to "each requirement of an exertional work level" in order to satisfy SSR 96-8p or other governing legal standards. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). Without more, Johnson has not shown that the ALJ failed to abide by SSR 96-8p.

Moreover, having reviewed the relevant narrative portions of the ALJ's decision in their entirety (*see* AR at 14-19), the Court cannot say that the RFC is unsupported by substantial evidence. Johnson has not established that the medical and nonmedical evidence cited by the ALJ in those pages provides only a "mere scintilla" of evidence or less in support of his determination, *see Biestek*, 139 S. Ct. at 1155, and the purportedly contrary subjective symptom statements highlighted by Johnson do not overwhelm the ALJ's evidence under these circumstances, *see, e.g.*, *Lax*, 489 F.3d at 1084.

Johnson has not shown that her RFC was reached in violation of controlling legal standards or was unsupported by substantial evidence. For this reason, the Court cannot say that the ALJ failed to properly consider her RFC, and remand on this ground is not proper.

## V. Conclusion

Having conducted a thorough review of the entire administrative record, the Court concludes that the ALJ applied the correct legal standards and that her factual findings were supported by substantial evidence. Johnson's arguments to the contrary are not well-taken. Accordingly, Johnson's motion to remand (Doc. 20) is **DENIED**.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**